UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARL DIAMOND,

        Plaintiff,

v.

HERMAN MARABLE, JR.,
a/k/a JUDGE HERMAN MARABLE, JR.,
SHELDON WOLIN, and S. WOLIN & CO.,

        Defendants.
_____/

Case No. 12-cv-11516

Paul D. Borman
United States District Judge

## OPINION AND ORDER GRANTING DEFENDANT JUDGE HERMAN MARABLE, JR.'S MOTION TO DISMISS (ECF NO. 10) AND STRIKING PLAINTIFF'S "MOTION TO REMOVE CASE FROM STATE COURT" (ECF NO. 3)

This matter is before the Court on Defendant Judge Herman Marable, Jr.'s ("Judge Marable") Motion to Dismiss. (ECF No. 10.) Plaintiff filed a Response (ECF No. 16) and Judge Marable filed a Reply (ECF No. 17). The Court held a hearing on February 6, 2013. Plaintiff did not appear at the hearing on the motion to dismiss. For the reasons that follow, the Court GRANTS Judge Marable's Motion to Dismiss.

**INTRODUCTION**

This matter is before the Court on Defendant Herman Marable's Motion to Dismiss based upon the doctrine of absolute judicial immunity. (ECF No. 10.) Also before the Court is Plaintiff's "Motion to Remove Case From State Court." (ECF No. 3.) Plaintiff's "Motion to Remove Case From State Court" does not comply with any of the requirements of 28 U.S.C. § 1446 for removing a civil action from State court and Plaintiff's Civil Cover Sheet filed in this action indicates that he

1

is filing an original proceeding in this Court, on the basis of federal question jurisdiction, for an alleged violation of his civil rights. (ECF No. 1, p. 9, Civil Cover Sheet.) Thus, the Court strikes Plaintiff's "Motion to Remove Case From State Court" and addresses in this Opinion and Order only Defendant Herman Marable's Motion to Dismiss.

## I. BACKGROUND

The essence of Plaintiff's Complaint against Michigan 68th District Court Judge Herman Marable, Jr. appears to be his claim that Judge Marable improperly issued a bench warrant for Plaintiff's arrest and wrongly held Plaintiff in contempt of court.[1] Plaintiff states in his Complaint that in 2002 a bench warrant was issued against him in a civil case and that Plaintiff was arrested on that warrant on March 5, 2012. (ECF No. 1, p. 2.) Plaintiff complains that the bench warrant never should have issued because "by law you can not issue a bench warrant in a civil case." (*Id.*) Plaintiff further claims that he was denied a hearing on March 5, 2012, when he claims he was arrested and was wrongfully held in jail for 15 days. (*Id.* p. 3.) It is not clear from Plaintiff's Complaint, or from his response to Marable's motion to dismiss, whether he was arrested on March 5, 2012 pursuant to the 2002 bench warrant or for some other reason.

Plaintiff states in his Complaint that he was a successful plaintiff in a small claims court

---

[1] While Plaintiff never identifies the federal statute under which he proceeds, his Civil Cover Sheet indicates that he asserts a federal question involving his civil rights and his Complaint titles Count I "Violations of My Civil Rights & Constitutional Rights Issuing a Bench Warrant." (ECF No. 1, Compl. 2.) The Court presumes his action is one under 42 U.S.C. § 1983 for violation of his civil rights. It does not appear that Plaintiff has attempted to plead any state law claims, as he has failed to plausibly suggest or even identify such claims. In any event, any such claims against Judge Marable based on the conduct described in the Complaint would be barred by Michigan's governmental immunity doctrine. *See McCarthy v. Sosnick*, Nos. 293482, 293483, 294383, 294385, 295782, 295784, 2011 WL 4424344, at *4 (Mich. Ct. App. Sept. 22, 2011) ("Under MCL 691.1407(5), a judge is absolutely immune from tort liability when acting in the scope of his or her judicial authority.") (citing *Odom v. Wayne County*, 482 Mich. 459, 482 (2008)).

matter and that "the defendant" (Plaintiff does not specify who but presumably it is one or both of the Wolin Defendants) failed to pay his judgment. (ECF No. 1, p. 2.) Plaintiff claims that "the judge" (again unidentified by name but presumably Judge Marable) is unfairly requiring Plaintiff to repay the monies he initially authorized Plaintiff to collect on the judgment. (*Id.*) Plaintiff provides the following rather cryptic scenario of events:

> The case was a small claims case all parties waived a right to trial by jury, an attorney and an appeal. The [sic] is no second hearing no [sic] The defendant never paid the judgment as ordered and plaintiff took every legal step to receive payment. With the approval of Judge Herman Marable, the defendant's bank account was garnished and the defendant appealed his case to the Judge who granted an appeal. Plaintiff was never charged with a felony nor charged with a misdemeanor yet he was asserted [sic] and jailed for 15 days. The plaintiff feels his Civil Rights and Constitutional Rights were violated.

(ECF No. 1, Compl. 2.)

The Plaintiff asserts that the 2002 bench warrant was issued in a small claims civil case and that "by law you can not issues [sic] a bench warrant in a civil case." (*Id.*) Plaintiff claims that enforcement of the 2002 bench warrant against him in 2012, which resulted in his arrest for failing to appear in a closed case and subsequent incarceration for 15 days without the benefit of a hearing, is a violation of his constitutional rights. Plaintiff provides additional factual matter (although little clarification) in his response to Marable's motion to dismiss, explaining that he was arrested and jailed for contempt of court. Plaintiff asserts that Judge Marable was without authority to hold Plaintiff in contempt when there "was no affirmative order entered against Plaintiff" or for "a mere money payment." (*Id.* 3-5). Plaintiff suggests that Judge Marable had no authority to take action against Plaintiff based upon an "impermissible appeal" of small claims judgment. (*Id.* at 7.) Plaintiff claims that Judge Marable is not immune from suit because he acted outside the scope of

3

his jurisdiction and authority.[2]

Plaintiff asks this Court to: (1) award money damages of $20 million from each individual Defendant including $15 million ($1 million for each day in jail); (2) "remove all hearings, orders, warrants & authority from state court 68th Dist. Court Flint, Judge Herman Marable, Jr." and "from Sheldon Wolin, Wolin & Co."; (3) preclude Defendants from suing Plaintiff in retaliation for filing this lawsuit; (4) put Judge Herman Marable Jr. In jail for 90 days; (5) put Sheldon Wolin in jail for 90 days; (6) remove Judge Herman Marable Jr. from the bench for life and revoke his ABA licenses for life; (7) remand this case to state court for all state court violations; and (8) waive court fees for this case in federal court and in state court.

---

[2] Although the Wolin Defendants have not filed a motion to dismiss the Complaint, they did file an Answer to Plaintiff's Complaint on January 30, 2013, and earlier filed an Affidavit of Meritorious Defense in support of their motion to vacate Plaintiff's motion for a default judgment against them. (ECF No. 18, Ex. B, Sheldon Wolin's Affidavit of Meritorious Defense.) Although not considered by the Court in ruling on this motion, the facts set forth in the Wolin Affidavit and in their Answer to the Complaint, do give some further background on Plaintiff's claims, which are only vaguely described in Plaintiff's Complaint and Response. The Affidavit states that S. Wolin & Co. was Plaintiff's landlord, that Plaintiff became delinquent on his rent, that S. Wolin & Co. prevailed in a summary disposition proceeding, and that the Genesee County Sheriffs physically evicted Plaintiff. (ECF No. 18, Ex. B, Wolin Aff. ¶¶ 2-6.) Plaintiff subsequently brought a small claims action against S. Wolin & Co. sometime in 2002 for the alleged loss of personal property that was placed out on the sidewalk as part of the eviction and sought a writ of garnishment against Wolin's checking account with Citizens Bank. (ECF No. 25, Answer to Complaint, ¶ 4A.) Judge Marable ruled against Plaintiff in the Flint 68th District Court but mistakenly released garnished funds in the amount of $2,500 that belonged to S. Wolin & Co. to Plaintiff. Plaintiff withdrew the garnished funds before the mistake was brought to Judge Marable's attention. When S. Wolin & Co. objected to the mistaken release of the funds in a proceeding before Judge Marable, Judge Marable announced in open court that Plaintiff's actions in withdrawing the money was an act of contempt and issued a bench warrant for Plaintiff's arrest. (*Id.*) The Wolin Defendants' recitation of these facts does not conflict with Plaintiff's version but does add detail. The Wolin Defendants state, only upon information and belief, that Plaintiff was in fact arrested in 2012 on an unrelated matter and that at that time the outstanding 2002 bench warrant was uncovered. According to the Wolin Defendants, Plaintiff's 15 day incarceration in 2012 was for the unrelated criminal matter and not pursuant to the 2002 bench warrant. (*Id.* ¶ 4E.) For purposes of ruling on the instant motion to dismiss, however, the Court accepts the allegations of Plaintiff's Complaint as true. *DirectTV*, 487 F.3d at 476.

4

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555 (internal citations omitted). Dismissal is appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id.* at 570. The Supreme Court clarified the concept of "plausibilty" in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

5

*Id.* at 1948-50. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 127 S.Ct. at 1965). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint or that are central to plaintiff's claims (2) matters of which a court may take judicial notice and (3) documents that are a matter of public record. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). *See also Greenberg v. Life Ins. Co. Of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claims could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

III. ANALYSIS

Judge Marable argues that he is absolutely immune from suit for the actions complained of in Plaintiff's Complaint. "Judicial officers generally are absolutely immune from civil suits for monetary damages under § 1983 for their judicial actions." *Cooper v. Parrish*, 203 F.3d 937, 944

(6th Cir. 2000) (quoting *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991)). "Furthermore, '[b]y enacting the 1996 Federal Courts Improvement Act . . . Congress . . . expanded the ambit of judicial immunity by amending § 1983 so as to prohibit injunctive relief against a judicial officer.'" *Coleman v. Governor of Michigan*, 413 F. App'x 866, 873 (6th Cir. 2011) (quoting *Gilbert v. Ferry*, 298 F. Supp. 2d 606, 611 (E.D. Mich.2003) and Federal Courts Improvement Act of 1996, Pub.L. No. 104–317, § 309(c), 110 Stat. 3847, 3853 (codified at 42 U.S.C. § 1983)). "The rationale for granting judicial officers absolute immunity when they act in their judicial capacities is that judicial officers should be free to make controversial decisions and act upon their convictions without fear of personal liability." *Cooper*, 203 F.3d at 937. Although immunity is absolute, it will be unavailable in two specifically defined circumstances:

> [A]bsolute judicial immunity is overcome only in two situations. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.
>
> Whether an action is judicial depends on the nature and function of the act, not the act itself. This functional analysis typically turns on two factors set forth by the Supreme Court in *Stump v. Sparkman* [, 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)]. First, looking to the nature of the act, courts must determine whether it is a function normally performed by a judge. . . . Second, looking to the expectations of the parties, courts must assess whether the parties dealt with the judge in his or her judicial capacity.

*DiPiero v. City of Macedonia*, 180 F.3d 770, 784 (6th Cir. 1999) (additional internal citations and quotation marks omitted).

In determining the issue of judicial capacity, "paradigmatic judicial acts are those that involve resolving disputes between parties who have invoked the jurisdiction of a court." *Barnes v. Winchell*, 105 F.3d 1111, 1116 (6th Cir. 1997) (internal citations and quotation marks omitted). "It

7

is well-settled in this Circuit that the issuance of an arrest warrant is a judicial act for judicial immunity purposes." *DiPiero*, 180 F.3d at 784 (citing *Ireland v. Tunis*, 113 F.3d 1435, 1441–42 (6th Cir. 1997) and *Foster v. Walsh*, 864 F.2d 416, 417–18 (6th Cir.1988)).

In determining whether there was an absence of jurisdiction, the term "jurisdiction" is broadly construed:

> The term "jurisdiction" is to be broadly construed to effectuate the purposes of judicial immunity. *Stump*, 435 U.S. at 356, 98 S.Ct. at 1104-05. Acts done "in the clear absence of jurisdiction," for which no immunity is afforded, should be distinguished from actions in "excess of jurisdiction," which fall within the ambit of immunity protection. *Id.* at 357 n. 7, 98 S.Ct. at 1105 n. 7 (quoting *Bradley*, 80 U.S. (13 Wall.) at 351-52). Thus, for example, a criminal court judge would be immune from liability for convicting a defendant of a nonexistent crime, an act taken in excess of his jurisdiction, whereas a probate court judge would not be immune from liability if he tried a criminal case because he clearly lacked all subject matter jurisdiction. *Id.* (citing *Bradley*, 80 U.S. (13 Wall.) at 352).
>
> Generally, where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes. *Adams*, 764 F.2d at 298. In *Sevier*, despite the fact that a judge of limited jurisdiction ordered the initiation of criminal and contempt proceedings, this court noted that the judge was "empowered to handle Juvenile Court cases ... [and], therefore, did not act in the clear absence of all jurisdiction." *Sevier [v. Turner]*, 742 F.2d [262] at 271 [(6th Cir. 1984)]; *see also Lopez [v. Vanderwater]*, 620 F.2d [1229] at 1234[(7th Cir. 1980)] (despite not being assigned to the particular branch of court, the judge was authorized by law to hear the kind of case in which he acted; his actions were not taken in clear absence of all jurisdiction).

*Barnes*, 105 F.3d at 1122.

In the instant case, taking as true the facts set forth in Plaintiff's Complaint, and viewing those facts in the light most favorable to the Plaintiff, it is clear that Judge Marable's actions in finding Plaintiff in contempt of court and issuing a bench warrant for Plaintiff's arrest were performed in his judicial capacity. The issue was presented to Judge Marable in the context of the parties' dispute over the release of the garnished funds that were the subject of the small claims

proceeding in his court. All of the acts of which Plaintiff complains are functions normally performed by a judge and the parties were dealing with the judge in an official capacity. Nothing in Plaintiff's response suggests that these actions were taken outside of the judicial setting and Plaintiff did not appear in this Court at the hearing on the motion to dismiss to offer further factual content for the Court's consideration.

Nor did Judge Marable lack subject matter jurisdiction over the claims. There is no question that Judge Marable had jurisdiction over the underlying small claims dispute between the parties. Although Plaintiff argues that Judge Marable had no "jurisdiction" to entertain an appeal from the small claims dispute, it is not at all clear from the facts alleged in Plaintiff's complaint that the contempt order was issued in the context of some type of "appeal." Again, Plaintiff did not appear at the hearing on the motion to dismiss in this Court to provide further clarification on this matter for the Court. Even if the contempt order was improperly issued, this goes to Judge Marable's authority to take the specific action complained of, *i.e.* to entertain an "appeal" and to issue the warrant for contempt, not to his subject matter jurisdiction over the underlying dispute between the parties. Therefore, he did not act "in the clear absence of all jurisdiction." *Barnes*, 105 F.3d at 1122.

As the Sixth Circuit noted in *Barnes*, "included in the absolute judicial immunity balance is the availability of alternate forums and methods, apart from a civil suit for damages, for litigants to protect themselves from the potential consequences of actions taken by a judge." 105 F.3d at 1123. Plaintiff had available to him "appropriate recourse" under applicable Michigan law and court rules if he felt that Judge Marable had exceeded his authority. It is unclear if Plaintiff exercised that right and he did not appear at the hearing on this motion to further enlighten this Court. Nonetheless, an appeal was available to him and provided a ready mechanism for protecting himself from the

consequences of Judge Marable's allegedly wrongful conduct.

## IV. CONCLUSION

It is incumbent on Plaintiff to plead enough factual matter to state a plausible claim for relief. With respect to his claims against Judge Marable, he has failed to plead sufficient facts to permit the Court to conclude that Judge Marable should lose the shield of absolute judicial immunity.

Accordingly for the reasons stated above, the Court concludes that Judge Marable is entitled to absolute immunity, GRANTS Defendant's motion to dismiss (ECF No. 10) and DISMISSES Judge Marable from this action.[3]

IT IS SO ORDERED.

Dated: 2-15-13

Paul D. Borman
United States District Judge

---

[3] Judge Marable also argues that Plaintiff's claims are barred by the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994) (establishing that any civil action, regardless of the relief sought, is barred if its resolution necessarily implies the invalidity of a criminal conviction). The Court need not reach this alternative basis for dismissal because it concludes that the claims against Judge Marable are barred by the doctrine of absolute immunity.